# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

Filed: March 7, 2025

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | |
| JENNIFER HUCH and LUCAS HUCH, | * | |
| on behalf of baby L.L.L.H., | * | UNPUBLISHED |
| | * | |
| Petitioners, | * | No. 21-1335V |
| | * | |
| v. | * | Special Master Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Dismissal Decision; Failure to Prosecute; |
| AND HUMAN SERVICES, | * | Insufficient Proof; Order to Show Cause. |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * | * | |

Curtis R. Webb, Monmouth, OR, for Petitioner.
Madylan Louise Yarc, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION[1]

## I.    INTRODUCTION

On May 6, 2021, Jennifer Huch and Lucas Huch ("Petitioners"), on behalf of baby L.L.L.H., filed a petition for compensation in the National Vaccine Injury Program, 42 U.S.C. § 300aa-10 et seq. (2018).[2]  Petitioners alleged that as the result of receiving diphtheria-tetanus-acellular pertussis ("DTaP"), Haemophilus influenzae type b ("Hib"), inactivated Polio ("IPV"),

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018) ("Vaccine Act" or "the Act").  All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

pneumococcal conjugate, rotavirus ("RV"), and Hepatitis B ("Hep B") vaccines on May 8, 2018, L.L.L.H. suffered a "rare form of infant leukemia . . . following vaccination overload to the immune system." Petition at 1 (ECF No. 1).

Based on the reasons set forth below and in the order to show cause dated December 5, 2024, the undersigned **DISMISSES** this case for failure to prosecute and insufficient proof.

## II.    BACKGROUND

### A.    Procedural History

On May 6, 2021, Petitioners filed a petition, pro se, alleging that their son, L.L.L.H., suffered from leukemia[3] as a result of DTaP, Hib, IPV, pneumococcal conjugate, RV, and Hep B vaccines he received on June 13, 2018. Petition at 1.

The case was assigned to the undersigned on May 7, 2021. Notice of Reassignment dated May 7, 2021 (ECF No. 8). After Respondent filed his Rule 4(c) report on April 14, 2022, arguing against compensation, the undersigned scheduled a status conference to explain the need for Petitioners to file expert reports to support their claim and directed Petitioners to file an expert report by July 5, 2022. Respondent's Report ("Resp. Rept.") at 1 (ECF No. 32); Order dated May 6, 2022 (ECF No. 34). Between June and September 2022, Petitioners received two extensions of time to file expert reports. See Order dated June 23, 2022 (ECF No. 35); Order dated Sept. 12, 2022 (ECF No. 36). Petitioners subsequently retained counsel and on November 17, 2022, Attorney Curtis Webb entered his appearance in the case. Consented Motion to Substitute Attorney, filed Nov. 17, 2022 (ECF No. 37).

Between January 23, 2023 and September 18, 2023, Petitioners filed five motions for extension of time to file expert reports. See Order to Show Cause dated Sept. 19, 2023, at 2 (ECF No. 49). On September 19, 2023, the undersigned issued an order to show cause and directed Petitioners to file an expert report by November 1, 2023. Id. at 3. Petitioners filed another motion for extension of time on October 27, 2023, and the undersigned issued a second order to show cause directing Petitioners to file an expert report by December 1, 2023. Order to Show Cause dated Oct. 30, 2023 (ECF No. 51).

Petitioners filed expert reports from Dr. Marcel Kinsbourne, a pediatric neurologist, and Dr. Vera Byers, an allergist and immunologist, on December 1, 2023. Petitioners' Exhibits ("Pet. Exs.") 18, 24. On May 22, 2024, Respondent filed rebuttal reports from Dr. Kenneth McClain, a pediatric hematologist/oncologist, and Dr. Christine McCusker, a pediatric allergist and immunologist. Resp. Exs. A, C.

The undersigned held a status conference on May 28, 2024 to discuss the next steps in the case and to address Dr. Kinsbourne's death. Order ("Status Conference Order") dated May 28, 2024 (ECF No. 70). At the status conference, Petitioners' counsel stated his desire to file

---

[3] Petitioners' expert reports later specified that L.L.L.H. suffered from B-cell acute lymphoblastic leukemia ("B-ALL"). Pet. Ex. 18 at 2; Pet. Ex. 24 at 3.

additional expert reports responsive to Respondent's expert reports and stated his desire for the Court to still consider Dr. Kinsbourne's report even though Dr. Kinsbourne could not provide any supplemental reports.  Id. at 1.  The undersigned agreed it was fair to allow Petitioners the opportunity to find another expert given the circumstances.  Id.  She warned that an expert who was not qualified would be less persuasive, and she recommended that the expertise of a hematologist/oncologist would be more persuasive.  Id.

The undersigned also expressed her concerns about Petitioners' case moving forward and outlined the insufficiencies of Dr. Kinsbourne's and Dr. Byers' reports.  Status Conference Order at 1-2.  She specifically noted

> Dr. Kinsbourne [was] not qualified for this case. . . . [H]e acknowledged that there is no evidence of vaccine causation for [B-ALL].  See Pet. Ex. 18 at 4.  Dr. Byers' expert report only ha[d] a few sentences that relate[d] to causation.  He stated, "inflammation caused by any source regulates hematopoietic stem cell function."  Pet. Ex. 24 at 3.  This opinion is conclusory, under-developed, and insufficient.  There is no supportive evidence in the form of medical literature to support a causal role of vaccines in the type of leukemia at issue in this case, or any other type of leukemia.

Id. at 1.  The undersigned explained that there was a question as to whether a reasonable basis existed for Petitioners to proceed with their claim if they were unable to obtain an opinion by a qualified expert.  Id. at 2.  Additionally, the undersigned could not find any other Vaccine Program case linking vaccination to leukemia.  Id.  Accordingly, to proceed, Petitioners were directed to provide persuasive evidence of causation from a qualified expert.  Id.  The undersigned stated she would allow Petitioners an additional six months to obtain an expert hematologist/oncologist before a decision would be made to adjudicate the case on the current record or dismiss the case.  Id.  The undersigned set an initial deadline of July 29, 2024 for Petitioner to file an expert report from a qualified hematologist/oncologist.  Id.

Between July 30, 2024 and December 3, 2024, Petitioners filed three unopposed motions for extension of time to file an expert report from a hematologist/oncologist.  See Order to Show Cause dated Dec. 5, 2024, at 2 (ECF No. 76).  In each of these motions for extension of time, Petitioners reported that they had not yet retained a qualified hematologist/oncologist.  See id.  On December 5, 2024, the undersigned issued a third order to show cause directing Petitioners to file an expert report from a hematologist/oncologist by February 3, 2025.  Id.  The undersigned warned Petitioners that a failure to file an expert report by the court-imposed deadline would "be interpreted as an inability to provide supporting evidence for this claim, and the case [would] be dismissed with prejudice."  Id.

Petitioners did not file an expert report from a hematologist/oncologist by February 3, 2025.

On February 4, 2025, Petitioners filed a status report informing the Court that Petitioners were "not able to file an expert witness report from a pediatric hematologist-oncologist that supported their allegation that vaccines can contribute to the cause of [B-ALL] by triggering the

process through which preleukemic cells transform into leukemic cells." Pet. Status Rept., filed Feb. 4, 2025, at 1 (ECF No. 77).

This matter is now ripe for adjudication.

**B.    Relevant Medical History**

L.L.L.H. was born on October 13, 2017. Pet. Ex. 16 at 6-7; Pet. Ex. 17 at 4. His Apgar scores were five at one minute, eight at five minutes, and nine at ten minutes. Pet. Ex. 16 at 7; Pet. Ex. 17 at 4. L.L.L.H. received a Hep B vaccination that day. Pet. Ex. 17 at 5.

On October 19, October 26, and November 13, 2017, L.L.L.H. saw his pediatrician, Dr. Joel Walker, for routine visits. Pet. Ex. 11 at 3-5, 7-8. He had weight gain noted at each visit. Id. At the November 13, 2017 visit, L.L.L.H. received his second Hep B vaccine. Id. at 8.

On November 22, 2017, L.L.L.H. presented to Dr. Walker for a rash, constipation with gas, and white patches on his tongue. Pet. Ex. 11 at 9. Dr. Walker diagnosed L.L.L.H. with thrush and prescribed Nystatin. Id. at 9-10.

L.L.L.H. saw Dr. Walker on January 17, 2018 for his two-month visit. Pet. Ex. 11 at 11-14. He had gained weight. Id. at 12. He received a DTaP-Hib-IPV combination vaccine, as well as pneumococcal conjugate and RV vaccinations. Id. at 14.

On February 22, 2018, L.L.L.H. presented to Dr. Walker complaining of eye discharge, ear wax, and "lymph nodes." Pet. Ex. 11 at 15. The assessment noted excessive cerumen in both ears and an obstructed left tear duct. Id. at 15. L.L.L.H. received a second dose of DTaP-Hib-IPV, pneumococcal conjugate, and RV vaccines. Id. at 15-16.

On May 8, 2018, L.L.L.H. had his six-month visit. Pet. Ex. 11 at 17-20. Assessment was "routine child health examination without abnormal findings." Id. at 19. L.L.L.H. received a third dose of Hep B, DTaP-Hib-IPV, pneumococcal conjugate, and RV vaccines. Id.

On May 16, 2018, L.L.L.H. returned to Dr. Walker with Petitioners reporting he was "fussy after immunizations last week" and was "eating less" and "warm to touch." Pet. Ex. 11 at 21. His temperature was 100.1°F. Id. He was alert, smiling, and playful, and in no acute distress. Id. He had no abnormalities noted on examination of his ears. Id. Dr. Walker diagnosed L.L.L.H. with an upper respiratory infection with cough and congestion and prescribed Amoxicillin. Id. at 21-22.

On May 18, 2018, L.L.L.H. presented to the emergency room ("ER") at Cook Children's Medical Center. Pet. Ex. 12 at 2. He was seen by Dr. Melissa Garretson. Id. Petitioners reported that L.L.L.H. received vaccinations ten days prior on May 8, 2018, and "since then[,] he has had increased fussiness," but no fever until they brought L.L.L.H. in to see Dr. Walker, at which point he had a fever of 101°F. Id. Petitioners reported increased fussiness and decreased sleep since then. Id. Petitioners report that on May 17, 2018, L.L.L.H. experienced a "choking episode" due to mucous. Id. Petitioners called emergency medical services, who "examined

him, and then left." Id. After, Petitioners reported that L.L.L.H. experienced two more episodes of "'shaking' and 'crying in pain.'" Id. Petitioners brought L.L.L.H. to the ER for "evaluation of possible intussusception." Id. Petitioners reported L.L.L.H. had one episode of non-bloody non-bilious emesis, and four episodes of non-bloody diarrhea within the past 24 hours as well as poor feeding habits. Id. Ultrasound of L.L.L.H.'s bowels revealed no evidence of intussusception. Id. Dr. Garrettson diagnosed L.L.L.H. with likely gastroenteritis. Id. Dr. Garrettson discharged L.L.L.H. to home, stopped antibiotics, and prescribed Pedialyte and acetaminophen for fever or pain. Id.

L.L.L.H. returned to the ER the next day, May 19, 2018. Pet. Ex. 13 at 12. Petitioners reported that L.L.L.H. had two episodes of staring with upper arm shaking and turning red. Id. The symptoms lasted for approximately five to six seconds, after which L.L.L.H. was sleepy. Id. Review of symptoms noted decreased appetite, crying, fever, congestion, rhinorrhea, and cough. Id. On examination, L.L.L.H. had nasal discharge and rhonchi. Id. A head computed tomography ("CT") scan noted paranasal sinus opacification with mastoid thickening that was greater on the left. Id. Results from the complete blood count ("CBC") revealed abnormal white blood count, red blood count, hemoglobin, hematocrit, platelet count, and absolute monocytes. Id. Results from the metabolic panel revealed abnormal glucose level and sodium level. Id. L.L.L.H. also had abnormal levels of C-reactive protein and lactic acid. Id. His cerebrospinal fluid analysis was unremarkable. Id. at 9. L.L.L.H. was admitted to the hospital that day for further workup. Id. L.L.L.H. had continued slow improvement while in the hospital and was afebrile from the second day of admission through his discharge. Id. at 2. "Pathology review of [a] blood smear revealed bone marrow suppression, consistent with viral suppression." Id. He was discharged on May 22, 2018, in good condition, with diagnoses of pancytopenia, fever, acute respiratory infection, and viral infection. Id. L.L.L.H. was to have a repeat CBC three days after discharge. Id.

On May 25, 2018, L.L.L.H. returned to the ER for a fever of 101.7°F. Pet. Ex. 14 at 4. He had been afebrile for 24 hours after his discharge from the hospital on May 22, 2018, and had continued to eat well; however, his oral intake began to decrease and his skin became mottled. Id. He was taken for repeat blood tests and was referred to the ER due to skin mottling. Id. Repeat lab tests and cultures obtained in the ER showed worsened anemia but improved neutropenia. Id. at 3. He continued to be pancytopenic. Id. He was admitted to the hospital to hematology/oncology for further evaluation. Id. at 4.

Upon admission, pediatric hematologist-oncologist Dr. Kelly Vallance assumed care for L.L.L.H. and recommended a bone marrow evaluation to rule out leukemia or bone marrow failure syndrome. Pet. Ex. 14 at 5. The bone marrow biopsy was completed on May 29, 2018. Id. at 8-9. Results from the bone marrow evaluation revealed evidence of infant B-ALL and the CBC showed "leukemic blasts." Id. at 10. L.L.L.H. was diagnosed with B-ALL. Id. Treatment pursuant to the children's oncology group infant B-ALL protocol was initiated. Id. L.L.L.H. remained at Cook Children's until July 7, 2018, undergoing treatment chemotherapy, for his B-ALL. Pet. Ex. 15 at 2. The discharge summary noted that L.L.L.H. was still neutropenic but was in "good condition" at the time of discharge. Id. Follow up oncology appointments were scheduled on an outpatient basis. Id.

L.L.L.H. was hospitalized on several occasions beginning on July 17, 2018 through 2020, for further treatment and management of his B-ALL.  See generally ECF No. 20-1[4] (documenting treatment for B-ALL through early 2020).

## III.   DISCUSSION

When petitioners fail to comply with court orders to prosecute their case, the court may dismiss the case.  Sapharas v. Sec'y of Health & Hum. Servs., 35 Fed. Cl. 503 (1996); Tsekouras v. Sec'y of Health & Hum. Servs., 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 819 (Fed. Cir. 1993); Vaccine Rule 21(c); see also Claude E. Atkins Enters., Inc. v. United States, 889 F.2d 1180, 1183 (Fed. Cir. 1990) (affirming dismissal of case for failure to prosecute for counsel's failure to submit pre-trial memorandum); Adkins v. United States, 816 F.2d 1580, 1583 (Fed. Cir. 1987) (affirming dismissal of cases for failure of party to respond to discovery requests).

Vaccine Program cases that have been dismissed for failure to respond to an Order to Show Cause include but are not limited to: Byrd v. Sec'y of Health & Hum. Servs., 778 F. App'x 924 (Fed. Cir. 2019); Ghasemipor v. Sec'y of Health & Hum. Servs., No. 20-17V, 2020 WL 7497878 (Fed. Cl. Spec. Mstr. Nov. 23, 2020); Flores v. Sec'y of Health & Hum. Servs., No. 20-157V, 2020 WL 5798502 (Fed. Cl. Spec. Mstr. Sept. 2, 2020); Button ex rel. W.S.B. v. Sec'y of Health & Hum. Servs., No. 16-1391V, 2017 WL 2876099 (Fed. Cl. Spec. Mstr. June 5, 2017); Duncan v. Sec'y of Health & Hum. Servs., No. 16-1367V, 2020 WL 6738118 (Fed. Cl. Spec. Mstr. Oct. 19, 2020), mot. for rev. denied, 153 Fed. Cl. 642 (2021).

The Vaccine Program also has precedent for dismissing cases due to a failure to submit sufficient expert reports.  See, e.g., M.G. v. Sec'y of Health & Hum. Servs., No. 17-743V, 2022 WL 1311661, at *21-22 (Fed. Cl. Spec. Mstr. May 3, 2022); Stachlewitz ex rel. H.G.S. v. Sec'y of Health & Hum. Servs., No. 13-220V, 2014 WL 5293629 (Fed. Cl. Spec. Mstr. Sept. 23, 2014); Duncan, 2020 WL 6738118.  In M.G., the petitioner was given two years to file an additional expert report supportive of causation, after the undersigned warned that petitioner's previous expert reports were "conclusory, insufficient, and lacking in evidentiary support."  2022 WL 1311661, at *21.  The petitioner failed to file an additional expert report and the petition was dismissed, inter alia, for failure to prosecute.  Id. at *22.  In Stachlewitz, the petitioner had over one year to file an expert report to refute the expert opinions of Respondent's expert.  2014 WL 5293629, at *4.  Petitioner failed to file an expert report to support petitioner's burden of proof and the case was dismissed.  Id. at *5.  In Duncan, the petitioner's case was dismissed for insufficient evidence.  153 Fed. Cl. at 648.  Petitioner filed expert reports with numerous deficiencies and failed to cure the inadequacies in the record despite numerous opportunities to do so.  Id. at 659.

Here, after 15 months of delay, an order to show cause issued on September 18, 2023, and a second order to show cause issued October 30, 2023, Petitioners filed deficient expert reports from Dr. Kinsbourne and Dr. Byers.  Dr. Kinsbourne was unqualified to opine on the

---

[4] Petitioners filed medical records without exhibit or page numbers.  See ECF Nos. 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 14, 15, 15-1, 15-2, 15-3, 16, 17, 20-1, 20-2, 21, 31-1.  These records are referenced using the ECF docket number.  After retaining counsel, the relevant excerpts of these medical records were re-filed as Petitioners' Exhibits 11 through 17.

alleged B-ALL vaccine injury and acknowledged in his report that there was no evidence of vaccine causation while Dr. Byers' opine was conclusory, under-developed, and insufficient. Additionally, Petitioners' experts did not provide supportive evidence in the form of medical literature. The undersigned explained the inadequacies of Petitioners' expert reports. She informed them that to proceed with their case they needed to provide persuasive evidence of causation from a qualified expert within six months.

On May 28, 2024, Petitioners were put on notice by the undersigned of the need for an additional expert report from a qualified expert to proceed with their claim, and Petitioners were given numerous opportunities to file this additional expert report.

Petitioners were directed to file an expert report from a qualified hematologist/oncologist by July 29, 2024. When Petitioners were unable to meet the July 29 deadline, the undersigned granted an extension until October 1, 2024. The undersigned again extended Petitioners' deadline to file an expert report until December 2, 2024. The December 2, 2024 deadline was outside of the six-month window the undersigned gave Petitioners to provide persuasive evidence of causation. Petitioners did not file an expert report by the December 2, 2024 deadline. One day later, on December 3, 2024, Petitioners requested a third extension of the deadline. The undersigned again extended the deadline to file an expert report from a qualified hematologist/oncologist until February 3, 2025. The undersigned warned Petitioners that failure to file an expert report by the February 3, 2025 deadline would result in the dismissal of their claim. Petitioners did not file an expert report by February 3, 2025. One day after the deadline, on February 4, 2025, Petitioners filed a status report conceding that they had been unable to file an expert report from a hematologist/oncologist that supported their allegation that vaccines are causative of B-ALL.

Like in M.G., Stachlewitz, and Duncan, the undersigned warned Petitioners that their expert reports were insufficient to prove causation and subsequently gave Petitioners multiple opportunities to file an expert report that would support their claim. Like in M.G., Petitioners were warned that failure to file an expert report would result in dismissal of the claim. However, Petitioners have failed to file a report from a qualified hematologist/oncologist.

Petitioners' failure to comply with Court orders and failure to respond to the Order to Show Cause by filing an expert report indicates an inability to provide supporting evidence for this claim. Therefore, the undersigned finds it appropriate to dismiss this case for insufficient proof and failure to prosecute.

Additionally, to receive compensation under the Act, Petitioners must prove either (1) that L.L.L.H. suffered a "Table Injury"—i.e., an injury falling within the Vaccine Injury Table—corresponding to one of his vaccinations, or (2) that he suffered an injury that was actually caused by a vaccine. See §§ 11(c)(1), 13(a)(1)(A). Because Petitioners do not allege L.L.L.H. suffered a Table Injury, they must prove a vaccine he received caused his injury. To do so, Petitioners must establish, by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship

between vaccination and injury." <u>Althen v. Sec'y of Health & Hum. Servs.</u>, 418 F.3d 1274, 1278 (Fed. Cir. 2005).

Petitioners cannot establish entitlement to compensation based solely on their assertions; rather, a vaccine claim must be supported either by medical records or by the opinion of a medical doctor. § 13(a)(1). In determining whether Petitioners are entitled to compensation, the special master shall consider all material in the record, including "any . . . conclusion, [or] medical judgment . . . which is contained in the record regarding . . . causation." § 13(b)(1)(A). In this case, the medical records are insufficient to establish entitlement to compensation; and thus, medical opinion must be offered in support.

Here, Petitioners have offered two medical opinions which are insufficient to establish causation and Petitioners conceded they are unable to file an expert report from hematologist/oncologist that supports their allegation that vaccines can contribute to the cause of B-ALL. Although Petitioners filed numerous medical records and expert witness reports, without the additional persuasive evidence of causation submitted by Petitioners, the undersigned finds that the record does not contain preponderant evidence demonstrating that L.L.L.H.'s B-ALL was caused by his vaccines.

## IV.    CONCLUSION

The undersigned expresses her sympathy to Petitioners and to L.L.L.H., but the case cannot proceed without preponderant proof of causation.

Accordingly, this case is **DISMISSED** for failure to prosecute and insufficient proof. In the absence of a timely filed motion for review pursuant to Vaccine Rule 23, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.

**IT IS SO ORDERED.**

<u>**s/Nora Beth Dorsey**</u>
Nora Beth Dorsey
Special Master