# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: August 19, 2026

| | |
|---|---|
| * * * * * * * * * * * * * * * * | |
| JENNIFER HUCH and LUCAS HUCH, on behalf of baby L.L.L.H., | UNPUBLISHED |
| Petitioners, | No. 21-1335V |
| v. | Special Master Nora Beth Dorsey |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Attorneys' Fees and Costs; Reasonable Basis. |
| Respondent. | |
| * * * * * * * * * * * * * * * * | |

Curtis R. Webb, Monmouth, OR, for Petitioners.
Madylan Louise Yarc, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On May 6, 2021, Jennifer Huch and Lucas Huch ("Petitioners"), on behalf of baby L.L.L.H., filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act," "the Program,"), 42 U.S.C. § 300aa-10 et seq. (2018)[2] alleging that as the result of receiving diphtheria-tetanus-acellular pertussis ("DTaP"), Haemophilus influenzae type b ("Hib"), inactivated Polio ("IPV"), pneumococcal conjugate, rotavirus ("RV"), and Hepatitis B ("Hep B") vaccines on May 8, 2018, L.L.L.H. suffered a "rare form of infant

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), Petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

leukemia . . . following vaccination overload to the immune system." Petition at 1 (ECF No. 1). The undersigned issued a dismissal decision on March 7, 2025 for failure to prosecute and insufficient proof. Decision dated Mar. 7, 2025 (ECF No. 78) ("Dismissal Decision").

On October 6, 2025, Petitioners filed a motion for attorneys' fees and costs. Petitioners' Motion for Attorneys' Fees and Costs ("Pet. Mot."), filed Oct. 6, 2025 (ECF No. 81). Petitioners request $55,046.41, which subtracts 40% from attorneys' fees. Id. at 2. Without any reductions, Petitioners billed $74,938.35 in attorney and paralegal fees and $9,500.00 in costs. Id. Respondent filed a response on October 20, 2025, arguing Petitioners lacked reasonable basis from the time of filing. Resp. Response to Pet. Mot. ("Resp. Response"), filed Oct. 20, 2025, at 1 (ECF No. 82). Petitioners filed a reply on November 3, 2025, maintaining Petitioners had reasonable basis for their claim. Pet. Reply to Resp. Response ("Pet. Reply"), filed Nov. 3, 2025 (ECF No. 85).

This matter is now ripe for adjudication. For the reasons discussed below, the undersigned **GRANTS IN PART** Petitioners' motion and awards **$46,969.18** in attorneys' fees and costs.

## I. BACKGROUND

### A. Procedural History

On May 6, 2021, Petitioners filed a petition, pro se, alleging that their son, L.L.L.H., suffered from leukemia[3] as a result of DTaP, Hib, IPV, pneumococcal conjugate, RV, and Hep B vaccines he received on June 13, 2018. Petition at 1.

The case was assigned to the undersigned on May 7, 2021. Notice of Reassignment dated May 7, 2021 (ECF No. 8). After Respondent filed his Rule 4(c) report on April 14, 2022, arguing against compensation, the undersigned scheduled a status conference to explain the need for Petitioners to file expert reports to support their claim and directed Petitioners to file an expert report by July 5, 2022. Respondent's Report ("Resp. Rept.") at 1 (ECF No. 32); Order dated May 6, 2022 (ECF No. 34). Between June and September 2022, Petitioners received two extensions of time to file expert reports. See Order dated June 23, 2022 (ECF No. 35); Order dated Sept. 12, 2022 (ECF No. 36). Petitioners subsequently retained counsel and on November 17, 2022, Attorney Curtis Webb entered his appearance in the case. Consented Motion to Substitute Attorney, filed Nov. 17, 2022 (ECF No. 37).

Between January 23, 2023 and September 18, 2023, Petitioners filed five motions for extension of time to file expert reports. See Order to Show Cause dated Sept. 19, 2023, at 2 (ECF No. 49). On September 19, 2023, the undersigned issued an order to show cause and directed Petitioners to file an expert report by November 1, 2023. Id. at 3. Petitioners filed another motion for extension of time on October 27, 2023, and the undersigned issued a second

[3] Petitioners' expert reports later specified that L.L.L.H. suffered from B-cell acute lymphoblastic leukemia ("B-ALL"). Pet. Exhibit ("Ex.") 18 at 2; Pet. Ex. 24 at 3.

order to show cause directing Petitioners to file an expert report by December 1, 2023. Order to Show Cause dated Oct. 30, 2023 (ECF No. 51).

Petitioners filed expert reports from Dr. Marcel Kinsbourne, a pediatric neurologist, and Dr. Vera Byers, an allergist and immunologist, on December 1, 2023. Petitioners' Exhibits ("Pet. Exs.") 18, 24. On May 22, 2024, Respondent filed rebuttal reports from Dr. Kenneth McClain, a pediatric hematologist/oncologist, and Dr. Christine McCusker, a pediatric allergist and immunologist. Resp. Exs. A, C.

The undersigned held a status conference on May 28, 2024 to discuss the next steps in the case and to address Dr. Kinsbourne's death. Order ("Status Conference Order") dated May 28, 2024 (ECF No. 70). At the status conference, Petitioners' counsel stated his desire to file additional expert reports responsive to Respondent's expert reports and stated his desire for the Court to still consider Dr. Kinsbourne's report even though Dr. Kinsbourne could not provide any supplemental reports. Id. at 1. The undersigned agreed it was fair to allow Petitioners the opportunity to find another expert given the circumstances. Id. She warned that an expert who was not qualified would be less persuasive, and she emphasized that the expertise of a hematologist/oncologist would be more persuasive. Id.

The undersigned also expressed her concerns about Petitioners' case moving forward and outlined the insufficiencies of Dr. Kinsbourne's and Dr. Byers' reports. Status Conference Order at 1-2. She specifically noted

> Dr. Kinsbourne [was] not qualified for this case. . . . [H]e acknowledged that there is no evidence of vaccine causation for [B-ALL]. See Pet. Ex. 18 at 4. Dr. Byers' expert report only ha[d] a few sentences that relate[d] to causation. She stated, "inflammation caused by any source regulates hematopoietic stem cell function." Pet. Ex. 24 at 3. This opinion is conclusory, under-developed, and insufficient. There is no supportive evidence in the form of medical literature to support a causal role of vaccines in the type of leukemia at issue in this case, or any other type of leukemia.

Id. at 1. The undersigned explained that there was a question as to whether a reasonable basis existed for Petitioners to proceed with their claim if they were unable to obtain an opinion by a qualified expert. Id. at 2. Additionally, the undersigned could not find any other Vaccine Program case linking vaccination to leukemia. Id. Accordingly, to proceed, Petitioners were directed to provide persuasive evidence of causation from a qualified expert. Id. The undersigned stated she would allow Petitioners an additional six months to obtain an expert hematologist/oncologist before a decision would be made to adjudicate the case on the current record or dismiss the case. Id. The undersigned set an initial deadline of July 29, 2024 for Petitioners to file an expert report from a qualified hematologist/oncologist. Id.

Between July 30, 2024 and December 3, 2024, Petitioners filed three unopposed motions for extension of time to file an expert report from a hematologist/oncologist. See Order to Show Cause dated Dec. 5, 2024, at 2 (ECF No. 76). In each of these motions for extension of time, Petitioners reported that they had not yet retained a qualified hematologist/oncologist. See id.

On December 5, 2024, the undersigned issued a third order to show cause directing Petitioners to file an expert report from a hematologist/oncologist by February 3, 2025. Id. The undersigned warned Petitioners that a failure to file an expert report by the court-imposed deadline would "be interpreted as an inability to provide supporting evidence for this claim, and the case [would] be dismissed with prejudice." Id.

Petitioners did not file an expert report from a hematologist/oncologist by February 3, 2025.

On February 4, 2025, Petitioners filed a status report informing the Court that Petitioners were "not able to file an expert witness report from a pediatric hematologist-oncologist that supported their allegation that vaccines can contribute to the cause of [B-ALL] by triggering the process through which preleukemic cells transform into leukemic cells." Pet. Status Rept., filed Feb. 4, 2025, at 1 (ECF No. 77).

The undersigned issued a decision dismissing this matter on March 7, 2025. Dismissal Decision. On October 6, 2025, Petitioners filed a motion for attorneys' fees and costs. Pet. Mot. Respondent filed a response on October 20, 2025, arguing Petitioners lacked reasonable basis from the time of filing, and Petitioners filed a reply on November 3, 2025. Resp. Response at 1; Pet. Reply.

This matter is now ripe for adjudication.

**B. Relevant Medical History**

L.L.L.H. was born on October 13, 2017. Pet. Ex. 16 at 6-7; Pet. Ex. 17 at 4. His Apgar scores were five at one minute, eight at five minutes, and nine at ten minutes. Pet. Ex. 16 at 7; Pet. Ex. 17 at 4. L.L.L.H. received a Hep B vaccination that day. Pet. Ex. 17 at 5.

On October 19, October 26, and November 13, 2017, L.L.L.H. saw his pediatrician, Dr. Joel Walker, for routine visits. Pet. Ex. 11 at 3-5, 7-8. Weight gain was noted at each visit. Id. At the November 13, 2017 visit, L.L.L.H. received his second Hep B vaccine. Id. at 8.

On November 22, 2017, L.L.L.H. presented to Dr. Walker for a rash, constipation with gas, and white patches on his tongue. Pet. Ex. 11 at 9. Dr. Walker diagnosed L.L.L.H. with thrush and prescribed Nystatin. Id. at 9-10.

L.L.L.H. saw Dr. Walker on January 17, 2018 for his two-month visit. Pet. Ex. 11 at 11-14. He had gained weight. Id. at 12. He received a DTaP-Hib-IPV combination vaccine, as well as pneumococcal conjugate and RV vaccinations. Id. at 14.

On February 22, 2018, L.L.L.H. presented to Dr. Walker complaining of eye discharge, ear wax, and "lymph nodes." Pet. Ex. 11 at 15. The assessment noted excessive cerumen in both ears and an obstructed left tear duct. Id. at 15. L.L.L.H. received a second dose of DTaP-Hib-IPV, pneumococcal conjugate, and RV vaccines. Id. at 15-16.

On May 8, 2018, L.L.L.H. had his six-month visit. Pet. Ex. 11 at 17-20. Assessment was "routine child health examination without abnormal findings." Id. at 19. L.L.L.H. received a third dose of Hep B, DTaP-Hib-IPV, pneumococcal conjugate, and RV vaccines. Id.

On May 16, 2018, L.L.L.H. returned to Dr. Walker with Petitioners reporting he was "fussy after immunizations last week" and was "eating less" and "warm to touch." Pet. Ex. 11 at 21. His temperature was 100.1°F. Id. He was alert, smiling, and playful, and in no acute distress. Id. He had no abnormalities noted on examination of his ears. Id. Dr. Walker diagnosed L.L.L.H. with an upper respiratory infection with cough and congestion and prescribed Amoxicillin. Id. at 21-22.

On May 18, 2018, L.L.L.H. presented to the emergency room ("ER") at Cook Children's Medical Center. Pet. Ex. 12 at 2. He was seen by Dr. Melissa Garretson. Id. Petitioners reported that L.L.L.H. received vaccinations ten days prior on May 8, 2018, and "since then[,] he has had increased fussiness," but no fever until they brought L.L.L.H. in to see Dr. Walker, at which point he had a fever of 101°F. Id. Petitioners reported increased fussiness and decreased sleep since then. Id. Petitioners report that on May 17, 2018, L.L.L.H. experienced a "choking episode" due to mucous. Id. Petitioners called emergency medical services, who "examined him, and then left." Id. After, Petitioners reported that L.L.L.H. experienced two more episodes of "'shaking' and 'crying in pain.'" Id. Petitioners brought L.L.L.H. to the ER for "evaluation of possible intussusception." Id. Petitioners reported L.L.L.H. had one episode of non-bloody non-bilious emesis, and four episodes of non-bloody diarrhea within the past 24 hours as well as poor feeding habits. Id. Ultrasound of L.L.L.H.'s bowels revealed no evidence of intussusception. Id. Dr. Garrettson diagnosed L.L.L.H. with likely gastroenteritis. Id. Dr. Garrettson discharged L.L.L.H. to home, stopped antibiotics, and prescribed Pedialyte and acetaminophen for fever or pain. Id.

L.L.L.H. returned to the ER the next day, May 19, 2018. Pet. Ex. 13 at 12. Petitioners reported that L.L.L.H. had two episodes of staring with upper arm shaking and turning red. Id. The symptoms lasted for approximately five to six seconds, after which L.L.L.H. was sleepy. Id. Review of symptoms noted decreased appetite, crying, fever, congestion, rhinorrhea, and cough. Id. On examination, L.L.L.H. had nasal discharge and rhonchi. Id. A head computed tomography ("CT") scan noted paranasal sinus opacification with mastoid thickening that was greater on the left. Id. Results from the complete blood count ("CBC") revealed abnormal white blood count, red blood count, hemoglobin, hematocrit, platelet count, and absolute monocytes. Id. Results from the metabolic panel revealed abnormal glucose level and sodium level. Id. L.L.L.H. also had abnormal levels of C-reactive protein and lactic acid. Id. His cerebrospinal fluid analysis was unremarkable. Id. at 9. L.L.L.H. was admitted to the hospital that day for further workup. Id. L.L.L.H. had continued slow improvement while in the hospital and was afebrile from the second day of admission through his discharge. Id. at 2. "Pathology review of [a] blood smear revealed bone marrow suppression, consistent with viral suppression." Id. He was discharged on May 22, 2018, in good condition, with diagnoses of pancytopenia, fever, acute respiratory infection, and viral infection. Id. L.L.L.H. was to have a repeat CBC three days after discharge. Id.

On May 25, 2018, L.L.L.H. returned to the ER for a fever of 101.7°F. Pet. Ex. 14 at 4. He had been afebrile for 24 hours after his discharge from the hospital on May 22, 2018, and had

continued to eat well; however, his oral intake began to decrease and his skin became mottled. Id. He was taken for repeat blood tests and was referred to the ER due to skin mottling. Id. Repeat lab tests and cultures obtained in the ER showed worsened anemia but improved neutropenia. Id. at 3. He continued to be pancytopenic. Id. He was admitted to hematology/oncology for further evaluation. Id. at 4.

Upon admission, pediatric hematologist-oncologist Dr. Kelly Vallance assumed care for L.L.L.H. and recommended a bone marrow evaluation to rule out leukemia or bone marrow failure syndrome. Pet. Ex. 14 at 5. The bone marrow biopsy was completed on May 29, 2018. Id. at 8-9. Results from the bone marrow evaluation revealed evidence of infant B-ALL and the CBC showed "leukemic blasts." Id. at 10. L.L.L.H. was diagnosed with B-ALL. Id. Treatment pursuant to the children's oncology group infant B-ALL protocol was initiated. Id. L.L.L.H. remained at Cook Children's until July 7, 2018, undergoing treatment chemotherapy for his B-ALL. Pet. Ex. 15 at 2. The discharge summary noted that L.L.L.H. was still neutropenic but was in "good condition" at the time of discharge. Id. Follow=up oncology appointments were scheduled on an outpatient basis. Id.

L.L.L.H. was hospitalized on several occasions beginning on July 17, 2018 through 2020 for further treatment and management of his B-ALL. See generally ECF No. 20-1[4] (documenting treatment for B-ALL through early 2020).

## II. LEGAL STANDARDS

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). Vaccine Program attorneys are not automatically entitled to a fees award in unsuccessful cases like this one. At a minimum, such a claim must be shown to have (1) possessed reasonable basis and (2) have been brought in good faith. § 15(e)(1); see, e.g., Chuisano v. Sec'y of Health & Hum. Servs., 116 Fed. Cl. 276, 284 (2014). Reasonable basis is an objective inquiry while good faith is a subjective inquiry. Id. at 289.

In this matter, the only question before the undersigned is whether Petitioners had a reasonable basis for their claim.

### A. Reasonable Basis

To obtain attorneys' fees pursuant to a Vaccine Act claim, a petitioner must have a reasonable basis to support all elements of the claim for which the petition is brought, including causation. Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs., 971 F.3d 1337, 1345-46 (Fed. Cir. 2020) (citing § 11(c)(1), § 15(e)(1)). An analysis of reasonable basis requires more than just a petitioner's belief in his or her claim. Turner v. Sec'y of Health & Hum. Servs., No. 99-544V, 2007 WL 4410030, at *6-7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less

[4] Petitioners filed medical records without exhibit or page numbers. See ECF Nos. 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 14, 15, 15-1, 15-2, 15-3, 16, 17, 20-1, 20-2, 21, 31-1. These records are referenced using the ECF docket number. After retaining counsel, the relevant excerpts of these medical records were re-filed as Petitioners' Exhibits 11 through 17.

than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." Chuisano, 116 Fed. Cl. at 283.

The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." Cottingham, 971 F.3d at 1346 (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert and clarifying that "the failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion"). Indeed, determining what constitutes "more than a mere scintilla" is a "daunting task." Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs., No. 15-1291V, 2021 WL 3085502, at *13 (Fed. Cl. Spec. Mstr. July 21, 2021).

While the Court in Cottingham did not purport to identify all forms of objective evidence reflective of reasonable basis, it stated that "objective medical evidence, including medical records . . . even where the records provide only circumstantial evidence of causation," can support a showing of reasonable basis. Cottingham, 971 F.3d at 1346 (citing Harding v. Sec'y of Health & Hum. Servs., 146 Fed. Cl. 381, 403 (2019)). The Cottingham Court also reiterated that the reasonable basis determination is still based on a "totality of the circumstances." Id.

In another recent opinion regarding reasonable basis, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. James-Cornelius v. Sec'y of Health & Hum. Servs., 984 F.3d 1374, 1379-81 (Fed. Cir. 2021). The Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." Id. at 1379 (citing Cottingham, 971 F.3d at 1346). When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors, which may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." Amankwaa v. Sec'y of Health & Hum. Servs., 138 Fed. Cl. 282, 289 (2018). This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. Hamrick v. Sec'y of Health & Hum. Servs., No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). Additionally, the Circuit recently noted "the Althen factors can provide definitional context to causation when evaluating whether there is a reasonable basis that a causal relationship exists between the vaccine and the injury." Sheller v. Sec'y of Health & Hum. Servs., 121 F.4th 1301, 1306 (Fed. Cir. 2024). As "[e]ach of the[] [Althen] factors speaks directly to whether evidence of a causal relationship between the administration of the vaccine and a petitioner's injuries exists[,] . . . the Althen factors [can] provide context and structure when evaluating causation for a reasonable basis." Id.

Additionally, there may be reasonable basis at the time that a claim is filed, which then dissipates as the claim proceeds. R.K. v. Sec'y of Health & Hum. Servs., 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing Perreira v. Sec'y of Health & Hum. Servs., 33 F.3d 1375, 1376-77 (Fed. Cir. 1994) (holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis")). If reasonable basis is lost, "[p]etitioners' counsels have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." Cottingham ex rel. K.C. v. Sec'y of Health & Hum.

Servs., 134 Fed. Cl. 567, 574 (2017) (citing Perreira, 33 F.3d at 1376; Curran v. Sec'y of Health & Hum. Servs., 130 Fed. Cl. 1, 6 (2017); Allicock v. Sec'y of Health & Hum. Servs., 128 Fed. Cl. 724, 727 (2016)).

## III. PARTIES' CONTENTIONS

### A. Petitioners' Contentions

Petitioners maintain there was a reasonable basis for their claim because they presented more than a scintilla of evidence in support. Pet. Mot. at 10; Pet. Reply at 1, 3.

Petitioners contend that "[t]he facts of [their] case, the opinions of two expert witnesses, and medical literature provided a reasonable basis for their allegation that [L.L.L.H.'s] May 8, 2018, vaccinations caused his [B-ALL]." Pet. Mot. at 6.

Petitioners first cite to the medical history of L.L.L.H. and argue "[t]he facts relevant to the onset of [] [B-ALL] provide support for the conclusion that his May 8, 2018, vaccinations contributed to the cause of his [B-ALL]." Pet. Mot. at 6. Petitioners reiterated his medical history, beginning with L.L.L.H.'s birth on October 13, 2017, then the subject vaccinations on May 8, 2018, followed by the various visits from May 16 to May 29, when he was diagnosed with B-ALL. Id. at 6-7. According to Petitioners, "[t]his sequence of events supports a conclusion that the vaccination contributed to the cause of [L.L.L.H.'s] leukemia—especially when understood in light of the expert witness reports and medical literature submitted." Id. at 7.

Petitioners also cite to the reports of Dr. Kinsbourne and Dr. Byers along with the medical literature to contend this evidence provides a reasonable basis for the proposition that vaccination could cause or trigger B-ALL. Pet. Mot. at 7-10. Petitioners' summarize "Dr. Kinsbourne and Dr. Byers opined that vaccines could trigger the pathogenic process that leads to the conversion of pre-leukemic B-cells to active leukemic B cells" and the medical literature examines the role of infections in the pathogenesis of B-ALL and whether vaccination could trigger leukemia. Id. at 9-10.

Petitioners conclude that "[a]lthough the available evidence did not provide preponderant evidence that the vaccinations . . . on May 8, 2018[] caused [L.L.L.H.'s] [B-ALL], the available evidence was sufficient to provide a reasonable basis for them to pursue their claim." Pet. Mot. at 10.

In their reply, Petitioners maintain they presented more than a scintilla of evidence in support of their claim by again citing to the medical literature from their experts as well as their experts' reports. Pet. Reply at 3-6. Petitioners also noted that following the undersigned's concerns at a status conference on May 28, 2024, and the additional time given to find a persuasive expert witness, "[P]etitioners concluded that they could not provide testimony from a qualified hematologist/oncologist[] [and] agreed to an order dismissing their claim." Id. at 6-7.

### B. Respondent's Contentions

Respondent argues "Petitioners' claim lacked a reasonable basis because [P]etitioners failed to demonstrate more than a mere scintilla of evidence in support of their causation-in-fact claim." Resp. Response at 10. And thus, their attorneys' fees and costs motion should be denied. Id.

Respondent maintains Petitioners "must point to evidence of a causal relationship between the administration of the vaccine and [the] injuries in order to establish that a reasonable basis for the claim existed when the petition was filed," and to prove causation-in-fact, Petitioners must provide preponderant evidence of the Althen prongs. Resp. Response at 10 (quoting Cottingham, 971 F.3d at 1346 (citing 42 U.S.C. § 300aa-11(c)(1)(C)(ii))) (emphasis omitted). And here, "[n]one of [the] treating physicians offered an opinion that [] vaccines played a role in causing his [B-ALL]" and this "sequence of events" is nothing more than a temporal association. Id. at 11.

Next, Respondent cites to the undersigned's orders and Dismissal Decision, in which the undersigned noted issues with Petitioners' causation-in-fact claim and opined there is no evidence to support a causal role of vaccines with the alleged injury. Resp. Response at 11-12.

Lastly, as the undersigned noted in an order, Respondent emphasizes no vaccine-caused leukemia case in the Program has been successful. Resp. Response at 12-13.

## IV. DISCUSSION AND ANALYSIS

### A. Reasonable Basis Analysis

The undersigned finds that after a review of the record, Petitioners satisfied the reasonable basis requirement of the Vaccine Act at the time of filing because there was more than a scintilla of objective evidence in the record supporting a feasible claim.

Here, the medical records support the vaccinations at issue were administered to L.L.L.H, that he was diagnosed with B-ALL, and detail the clinical course from vaccination to diagnosis. Though none of the treating providers provided support of causation, this lack of evidence undercuts the veracity of Petitioners' causation-in-fact claim under Althen, which is a different standard of proof. Petitioners need only to submit "more than a mere scintilla" of objective evidence, which is "less than a preponderance of proof" required to prove entitlement. Cottingham, 971 F.3d at 1346; James-Cornelius, 984 F.3d at 1379. The Federal Circuit has specifically held that "[m]edical records can support causation [for reasonable basis] even where the records provide only circumstantial evidence of causation" for entitlement. Cottingham, 971 F.3d at 1346.

Respondent's reasonable basis objection is largely based on the fact that Petitioners were not able to prove their causation-in-fact claim and only provided evidence of a temporal relationship between vaccination and diagnosis. "While a petitioner does not need to show a certain likelihood of success, a temporal relationship between the vaccine and the alleged

symptoms by itself is not sufficient to establish a reasonable basis." Corum ex rel. Corum v. Sec'y of Health & Hum. Servs., No. 20-210V, 2022 WL 3225436, *4 (Fed. Cl. Spec. Mstr. July 12, 2022); see also Bekiaris v. Sec'y of Health & Hum. Servs., 140 Fed. Cl. 108, 114 (2018) ("Temporal proximity of a vaccine to the onset of symptoms, without more, fails to establish a reasonable basis for a vaccine claim."); Chuisano, 116 Fed. Cl. at 287 (noting "reasonable basis requires [] more than evidence showing only that the vaccine preceded the onset of the injury"). "However, it is not necessary for petitioner[s] to substantiate the entirety of [their] allegations in order to have had a reasonable basis for the filing of her petition." H.D. v. Sec'y of Health & Hum. Servs., No. 19-871V, 2024 WL 2034219, at *5 (Fed. Cl. Spec. Mstr. Apr. 8, 2024). The reasonable basis determination is still based on a "totality of the circumstances." Cottingham, 971 F.3d at 1346.

Utilizing a "totality of the circumstances" approach, the undersigned finds the objective evidence presents more than a mere scintilla of evidence. Petitioners were able to provide two expert reports in support of their claim along with medical literature. And although these reports were not found reach the level of preponderance required for causation, the undersigned finds these reports, medical literature, and medical records provide "more than a mere scintilla" of evidence to support a reasonable basis for filing the petition. See, e.g., Svagdis ex rel. A.S. v. Sec'y of Health & Hum. Servs., No. 15-520V, 2020 WL 3969874, at *2-3 (Fed. Cl. Spec. Mstr. June 4, 2020) (finding a reasonable basis for an award for attorneys' fees and costs where petitioners showed more than a temporal proximity between the subject vaccines and symptoms by submitting four expert reports of physicians offering medical opinions and medical literature in support of potential causation).

Lastly, even though no vaccine-caused leukemia cases have been successful in the Vaccine Program, does not mean this claim lacked reasonable basis from the outset. See, e.g., Turner, 2007 WL 4410030, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) (explaining the reasonable basis requirement examines "not [] the likelihood of success [of a claim] but more to the feasibility of the claim"). "[I]n a field bereft of complete and direct proof of how vaccines affect the human body," petitioners will inevitably be compelled to explore novel theories "hitherto unproven in medicine." Althen v. Sec'y of Health & Hum. Servs., 418 F.3d 1274 (Fed. Cir. 2005); see also Browning v. Sec'y of Health & Hum. Servs., No. 02-929V, 2010 WL 3943556, at *1, *13-15 (Fed. Cl. Spec. Mstr. Sept. 27, 2010) (contemplating "the extent to which a claimant alleging a 'novel' theory of vaccine injury may be permitted to incur fees and costs in an unsuccessful quest for supporting medical evidence" and ultimately awarding attorneys' fees and costs). Here, Petitioners assert a novel injury in which the undersigned is not aware of any Vaccine Program cases compensating petitioners. As contemplated in Amankwaa, the undersigned incorporates the novelty of Petitioners' theory into her reasonable basis analysis.

Here, Petitioners had reasonable basis to file their petition, but did not have a reasonable basis to sustain their claim due to a lack of qualified expert testimony from an oncologist/hematologist and for the issues raised by the undersigned during the May 2024 status conference. Once it became apparent that their claim could not be supported by a qualified expert, Petitioners moved to dismiss their case. Because the undersigned finds that Petitioners' claim had reasonable basis, she will award reasonable attorneys' fees and costs.

**B. Attorneys' Fees**

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Hum. Servs., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Hum. Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by the Respondent and without providing the Petitioner notice and opportunity to respond. See Sabella v. Sec'y of Health & Hum. Servs., 86 Fed. Cl. 201, 209 (2009).

A special master need not engage in a line-by-line analysis of Petitioners' fee application when reducing fees. Broekelschen v. Sec'y of Health & Hum. Servs., 102 Fed. Cl. 719, 729 (2011). Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Wasson v. Sec'y of Health & Hum. Servs., 24 Cl. Ct. 482, 484 (Fed. Cl. 1991), rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton, 3 F.3d at 1521.

**1. Hourly Rates**

Petitioners request the following hourly rates for the work of their attorney, Mr. Curtis Webb: $497.50 per hour for work performed in 2022, $524.00 per hour for work performed in 2023, $553.50 per hour for work performed in 2024, and $594.50 per hour for work performed in 2025. Petitioners also request a rate of $173.50 per hour for paralegal work performed in 2023 and $197.00 per hour for paralegal work performed in 2025. The undersigned finds these rates are reasonable and in accordance with what these attorneys and paralegals have previously been awarded for their Vaccine Program work. The undersigned will therefore award the above rates in full.

**2. Reduction of Billable Hours**

In reducing an award of fees, the goal is to achieve rough justice, and therefore a special master may take into account their overall sense of a case and may use estimates when reducing an award. See Florence v. Sec'y of Health & Hum. Servs., No. 15-255V, 2016 WL 6459592, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016) (citing Fox v. Vice, 563 U.S. 826, 838 (2011)). It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. Bell v. Sec'y of Health & Hum. Servs., 18 Cl. Ct. 751, 760 (1989). Petitioners bear the burden of documenting the fees and costs claimed.

Mr. Webb cut his fees by 40%, acknowledging "the number of hours devoted to [this] case is unusually high given the fact that [the] case did not progress beyond the stage at which expert witness reports were filed." Pet. Mot. at 17. Petitioners and Mr. Webb also acknowledged that they "should have recognized the difficulties that led to the dismissal of their claim sooner." Id. They believe a 40% reduction "adequately addresses the high number of hours devoted to their case while continuing to recognize the difficult and complex nature of their claim for compensation." Id.

The undersigned finds that given the excessive amount of time counsel was given to file expert reports, and the fact that two orders to show cause issued due to these delays, a reduction of 50% from the total fees request is reasonable and appropriate. This results in a reduction of $37,469.17.[5] Petitioners are therefore awarded $37,469.18 in attorneys' fees.

### C. Attorneys' Costs

Petitioners also request $9,500.00 in costs for expert witness fees, $8,000.00 for Dr. Kinsbourne and $1,500.00 for Dr. Sobota. Petitioners have provided adequate documentation for Dr. Sobota and this cost will be awarded in full. However, as Respondent noted, Petitioners have not substantiated the cost for Dr. Kinsbourne's work on this matter with any evidence. The request for $8,000.00 is an estimate from Petitioners' counsel based on prior cases. Although there is no invoice for Dr. Kinsbourne's expert services, the undersigned nevertheless finds that this request is consistent with what Dr. Kinsbourne has been previously awarded, and is also reasonable herein. See, e.g., Sholdebrand v. Sec'y of Health & Hum. Servs., No. 18-1368V, 2026 WL 1005221, at *3 (Fed. Cl. Spec. Mstr. Feb. 25, 2026); Nieves v. Sec'y of Health & Hum. Servs., No. 18-1602V, 2023 WL 7131801, at *5 (Fed. Cl. Spec. Mstr. Oct. 2, 2023).

## V. CONCLUSION

Based on all of the above, the undersigned finds that it is reasonable to compensate Petitioners' counsel as follows:

| | |
|---|---|
| Requested Attorneys' Fees: | $74,938.35 |
| Reduction of Attorneys' Fees: | - ($37,469.17) |
| Awarded Attorneys' Fees: | $37,469.18 |
| | |
| Requested Attorneys' Costs: | $9,5000.00 |
| Reduction of Attorneys' Costs: | - ($0.00) |
| Awarded Attorneys' Costs: | $9,500.00 |
| | |
| **Total Attorneys' Fees and Costs:** | **$46,969.18** |

**Accordingly, the undersigned awards:**

[5] $73,479.85 + $1,458.50 = $74,938.35 x 0.50 = $37,469.17. The undersigned rounded down.

**Petitioners are awarded attorneys' fees and costs in the total amount of $46,969.18, to be paid through an ACH deposit to Petitioners' counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.[6]

**IT IS SO ORDERED.**

**s/ Nora Beth Dorsey**
Nora Beth Dorsey
Special Master

[6] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.